IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES WILLIAM CARTER, | : | |
| Plaintiff | : | Civil Action 2:06-cv-918 |
| v. | : | Judge Sargus |
| MICHAEL SHEETS, *et al.*, | : | Magistrate Judge Abel |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to the motion of the remaining defendant in this action, former Ross Correctional Institution ("RCI") librarian Gwendolyn Williams ("Williams"), for summary judgment (Doc. 80). Plaintiff originally filed this action on October 30, 2006, against some twenty-one defendants. On August 14, 2008, the Court issued an order adopting the Magistrate Judge's earlier report and recommendation that the complaint be dismissed as to all defendants except Williams. She now moves for summary judgment.

Plaintiff, who is incarcerated in the Ross Correctional Institution, alleges in his verified complaint that Williams retaliated against him for numerous grievances which he filed concerning the prison library, by seizing as purported contraband

1

certain "legal exhibits" which Plaintiff had given her to photocopy.[1] (Doc. 2 at ¶50.) These documents were the property of another inmate, Becker, who had used them as exhibits in other litigation of his own. Williams thereupon allegedly turned over the seized documents to the shift captain and filed a conduct report.[2] This conduct report was later dropped, and Plaintiff was found not guilty of possession of contraband. (Doc. 2 at ¶53.)

There are few facts in dispute. Defendant Williams attached a declaration to her motion for summary judgment; in this she confirmed that she had received documents to photocopy from Plaintiff, determined that they belonged to another inmate, and turned them over to the captain's office. (Doc. 80-2 at ¶4, 7.) She did

---

[1] Plaintiff's Complaint contains a number of allegations that the RCI was, in various ways, denying prisoners adequate access to the court system. However, the claims based upon these allegations were dismissed with respect to all other defendants in the Court's Order of August 14, 2008 (Doc. 71). Moreover, to the extent that Plaintiff alleges that Defendant Williams participated in these alleged activities, the Court has already found that Plaintiff did not bring an actionable claim concerning them. (Doc. 71 at 7.) Therefore, this Report and Recommendation will address only Plaintiff's remaining claim – that of retaliation on the part of Williams.

[2] Plaintiff attached as Exhibit P to his complaint (Doc. 2-8) a handwritten Conduct Report form which, perhaps owing to a combination of photocopying and carbon paper, is illegible. Typed beneath the handwritten text is the following:

Above statement typed for clearity [sic]:
"On the above date and time Inmate Carter gave Ms. Williams the Librarian legal documents to be copied. After Ms. Williams scanned the documents, she realized the documents did not belong to Inmate Carter, the documents belonged to another Inmate. The documents indeed belonged to Inmate Becker 249-474. These documents were confiscated and was turned over to the Shift Captain's Office".

not deny creating the Conduct Report, but stated that she did not recall doing so. (Id. at ¶8.) Therefore, the only potentially genuine issue of material fact is whether or not Williams actually undertook the allegedly retaliatory act – issuing the conduct report.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed

in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### Retaliation

Some of the relief which Plaintiff seeks is unavailable to him on the claims remaining in this action. The injunctive relief requested in his complaint is obviously inapplicable to Defendant Williams, because it is "in the form of a mandate to the Ohio Department of Rehabilitation and Corrections and Ross Correctional Institution" to make certain policy changes. He does seek compensatory damages of $10,000.00 from Williams for "mental trauma and emotional distress", and punitive damages of $10,000.00 from Williams for "failure

4

to obey and enforce laws". (Doc. 2 at ¶81-82.)

Defendants correctly note that under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). Plaintiff has here made no allegation at all of any kind of physical injury. Therefore, he cannot recover against Williams for "mental trauma and emotional distress".

A claim of "retaliation" can arise in various statutory contexts. One of these, courts have recognized, is an action under 42 U.S.C. §1983 claiming that government officials retaliated against a plaintiff prisoner for exercising a constitutional right. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). In order to bring a claim for retaliation, a plaintiff must show that he engaged in conduct protected by the Constitution or by statute, that the defendant took an adverse action against the plaintiff, and that this adverse action was motivated, at least in part, because of the protected conduct. *Id.* at 386-387. One such constitutionally protected activity would be the exercising of First and Fourteenth Amendment rights by filing grievances. *Smith v. Craven*, 61 Fed.Appx. 159, 161 (6th Cir. 2003). Such grievances must be non-frivolous to be constitutionally protected. *Id.* at 162. If the plaintiff establishes the three elements of a retaliation claim, the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct. *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977).

5

Defendant does not contest Plaintiff's claim to have filed at least three grievances against her. His verified complaint alleges having done so on August 16, 2005, August 25, 2005, and in the afternoon of August 25, 2005; in the first case complaining that Williams had wrongly decreased the library hours, in the second complaining that Williams had refused to make copies of documents he wished to use as litigation exhibits, and in the third complaining that Defendant Williams had stolen the documents later characterized as contraband. Williams' affidavit does not refute, or make any comment about, these grievances; moreover, she does not argue that these grievances were frivolous. Thus, Plaintiff has met the first element of a retaliation claim.

As noted above, there exists a potential issue of material fact as to whether or not Williams actually undertook the allegedly retaliatory action of issuing a conduct report against him. The report attached as Exhibit G to Plaintiff's Complaint is illegible, and there is no information before the Court concerning whether the text typed at the bottom of the page accurately transcribes any actual handwriting. Nevertheless, Williams states that she cannot recall issuing the report, not that she did not do so. (Doc. 80-2 at ¶8.) Furthermore, the Inspector of Institutional Services' response of September 21, 2005 implies that an inmate disciplinary action took place regarding the alleged contraband materials (Doc. 2-7 at 5). For purposes of a motion for summary judgment, a court will draw all reasonable inferences in favor of the nonmoving party. Therefore, the Court will assume that Williams did issue the conduct report.

Defendant does argue, however, that the conduct Plaintiff alleges does not rise to the level of an "adverse action", because in order to be actionable, such action must be one "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. Here, Defendant points out, the conduct report "did not deter [Plaintiff] in the least from continuing to file grievances and to litigate." (Doc. 80 at 9.) In *Thaddeus-X*, the Sixth Circuit Court of Appeals examined the question of how severe conduct would have to be to rise to the level of "adverse action". The plaintiff in that case alleged that, in retaliation for his assistance to another prisoner in suing prison officials, he was transferred to an administrative segregation area used for housing mentally ill prisoners. The *Thaddeus-X* court recognized that "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* at 396, quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). However, it found that in that case harassment and transfer to the prison area used for housing mentally disturbed inmates certainly qualified as treatment which would deter an ordinary person from persisting in litigation.

The action of which the Plaintiff here complains is not of the same severity as that suffered by the plaintiff in *Thaddeus-X*. Nevertheless, the Court is not persuaded by Defendant's argument that the situation is analogous to that in, *e.g.*, *Johnson v. Merrill*, 187 F.3d 636 (6th Cir. 1999). In *Johnson*, a prisoner sued prison officials, claiming that they had retaliated against her for bringing litigation by housing her with cellmates who smoked. The Court found that the plaintiff had

7

voluntarily chosen to live in a unit where smoking was permitted, and that no retaliatory conduct had therefore taken place. The *Johnson* court also found, citing *A.C.L.U. of Maryland v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993), that "[i]n addition, the record reveals that Johnson continues to file grievances and litigate this and other cases. Thus, she does not show that she has been prevented from engaging in the constitutionally protected conduct that allegedly prompted the retaliatory actions at issue. [...] Therefore, the defendants met their burden of showing that their conduct did not cause Johnson to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in seeking access to the courts."

Here, unlike in *Johnson*, the effect of the allegedly retaliatory action was directly related to the activity allegedly being retaliated against. Plaintiff claims that, in retaliation for his filing grievances complaining that he was being denied access to legal resources, Defendant further denied him access to legal resources (by seizing his exhibits and citing him for their possession). Such conduct, unlike the more indirect retaliation alleged in, *e.g.*, *Johnson*, would certainly deter a person of ordinary firmness from continuing to engage in seeking access to the courts, by making it appear that the further exercise of such rights was likely to be blocked or immediately punished. Defendant's argument that Plaintiff here was not actually deterred from further litigation is inapposite; by that reasoning, no prisoner plaintiff could ever sue alleging retaliation for filing litigation, because the existence of the resulting retaliation suit would demonstrate that the prisoner had

not been deterred from seeking access to the courts. The Court therefore concludes that the conduct which Plaintiff alleges was an "adverse action".

The issue at hand is thus whether Williams' issuance of the conduct report was motivated, at least in part, by Plaintiff's conduct in filing grievances. As the *Thaddeus-X* court held, "[t]he analysis of motive in retaliation claims is well-developed. Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. [...] If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399.

Defendant Williams has attached to her motion for summary judgment a copy of Ohio Department of Rehabilitation and Correction ("ODRC") Policy 59-LEG-01, and cites §F.2.d:

> The fact that one inmate is assisting another, does not entitle such inmate to maintain possession [of] the legal materials of another inmate. Inmates may maintain possession of their own legal materials as provided above in Paragraph E.

Williams further cites Ohio Admin. Code §5120-9-06 (C)(50), which lists "possession of property of another" amongst rule violations for inmates. She argues that her actions in confiscating and turning over to the shift captain the papers which Plaintiff presented to her for photocopying were correct, because they were in compliance with ODRC policy and the requirements of the Ohio Administrative Code. Williams' defense is, in essence, that she would have taken the same action

9

with any prisoner, because the action was mandated by prison rules. Therefore, retaliation could not have been the motive.

Plaintiff argues in response that his possession of Becker's exhibits was not prohibited by 59-LEG-01 §F.2.d, because that regulation is intended to carry into effect §F.3, which mandates that no inmate shall "trade, exchange, or deal his/her assistance with legal matters to another inmate." Thus, Williams' actions were not legitimate efforts to enforce ODRC regulations; instead, they were actually intended to prevent Plaintiff from effectively pursuing litigation against prison officials. Furthermore, Plaintiff asserts that "[t]he real question here is, is DRC Policy 59-Leg-01 a 'Legitimate prison regulation?'" (Doc. 81 at 2.)

The Court observes in the first instance that it is unpersuaded by Plaintiff's interpretation of §F.2.d; it appears from the regulation in question that it is intended to specify the parameters within which inmates can receive assistance from one another, not to help bar the selling of legal services. *Compare* §F.2.b; §F.2.c. More importantly, however, Plaintiff's challenge to the legitimacy of 59-LEG-01 is irrelevant to his claim of retaliation on the part of Williams. Whether or not it *should be* ODRC policy to seize inmates' legal materials in the possession of another has no bearing on whether Williams performed such seizure *because* she was carrying out that policy.[3]

---

[3] Plaintiff makes reference in two places (Doc. 81 at 2, 3-4) to another senior librarian, Ms. Speary, who was apparently willing to make copies of other inmates' exhibits. This does not allege uneven application of prison regulations, however, because Plaintiff does not suggest that Defendant Williams was willing to make

Plaintiff further complains that the ODRC has failed to comply with *Bounds v. Smith*, 430 U.S. 817 (1977), which he contends requires the ODRC to provide prisoners with adequate assistance from persons trained in the law. He asserts that "[i]f RCI had such a person he/she could have prevented this action by informing the Defendant of Plaintiff's right to use other inmates exhibits as circumstantial evidence." (Doc. 81 at 3.) Plaintiff's claim that Williams' seizure of the exhibits was motivated by retaliation for his prior grievances cannot be reconciled with his assertion here that Williams' seizure of the exhibits was motivated by her ignorance of RCI's legal obligations. His claims that the Ross Correctional Institution is failing to provide adequate inmate legal assistance, or that Ohio's penological regulations are unconstitutional, may or may not be justified. However, he makes no effective refutation to Williams' defense that the seizure and conduct report were mandated by those regulations, not motivated by retaliatory animus.

There is before the Court no evidence to demonstrate that Williams' actions were motivated, at least in part, by Plaintiff's protected activity in filing grievances, and Defendant has demonstrated that, even though the conduct report was eventually resolved in Plaintiff's favor, her actions were undertaken in accordance with state regulation on inmate possession of contraband. Defendant is therefore entitled to judgment on Plaintiff's claim of retaliation as a matter of law.

---

copies for inmates other than Plaintiff (and thus enforce §F.2.d only against him) .

Accordingly, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Doc. 80) be **GRANTED**, that judgment be entered in favor of Defendant Gwendolyn Williams, and that, there being no other defendants in this action, this case be terminated.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

                                                    s/Mark R. Abel
                                                    United States Magistrate Judge